[Cite as *State v. Burge*, 2026-Ohio-1552.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                      :

    Plaintiff-Appellee,                   :

                                                         Nos. 115282 and 115563

    v.                                                :

KEVIN BURGE,                                        :

    Defendant-Appellant.              :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 30, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-694462-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Morgan Austin, Assistant Prosecuting Attorney, *for appellee.*

Eric M. Levy, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} In this delayed appeal, defendant-appellant Kevin Burge appeals from his convictions, sentence, and the trial court's denial of his pro se, post-sentence motion to withdraw his guilty pleas. For the following reasons, we affirm.

{¶ 2} In August 2024, a grand jury charged Burge in a 63-count indictment pertaining to several incidents occurring between December 2023 and March 2024. The offenses included multiple counts of theft, felonious assault, robbery, receiving stolen property, improperly handling firearms in a motor vehicle, falsification, obstructing official business, and having weapons while under a disability. Many of the counts included one- and three-year firearm specifications.

{¶ 3} On February 24, 2025, the court held a pretrial at which the State offered him a plea deal. Burge would plead guilty to 39 counts, including "several amendments to the indictment, but . . . the agreed recommended range would be 14 to 18 years" prior to a Reagan Tokes Law tail. (Tr. 25-26.) After rejecting this plea, Burge voiced his preference for a jury trial and asked for new counsel and a continuance of the trial date. The court denied both oral motions, reasoning that the "defendant and defense counsel have, in my estimation, worked very well together throughout all of this time, and now that we're nearing the trial and he doesn't like what he's being told, he's asking for a withdrawal of counsel." (Tr. 32.)

{¶ 4} The court convened for trial on March 3, 2025. The State placed the prior plea offer on the record, and Burge again voiced his preference to proceed to a jury trial rather than plead to a deal with a 14-to-18-year sentence. When offered time to confer with his counsel again, Burge asked for a psychiatric reevaluation, referring to an earlier investigation into his competency under which it was determined that Burge was malingering. The court eventually adjourned with the expectation that trial would begin later that afternoon.

{¶ 5} Later that day, the trial court went on the record and indicated that the parties had spent several hours discussing further plea negotiations. Under the newly proposed plea agreement, Burge would plead guilty to 39 counts, two one-year firearm specifications, and one three-year firearm specification. The State explained that it modified several of the firearm specifications so that the new agreement's ten-year "floor" was possible but clarified that this minimum did not include the indefinite sentence pursuant to the Reagan Tokes Law. The State explained that "by agreement of the parties, the parties agree to a floor of a ten-year prison sentence, with the understanding that the State will argue for a higher sentence, and that the Court may impose any legal sentence. But there is an agreement as to a floor of ten years on this plea offer." (Tr. 60.) Before proceeding with the Crim.R. 11 colloquy, the court confirmed with Burge that he understood that he was required to serve the two failure-to-comply charges consecutively. Burge responded in the affirmative.

{¶ 6} The trial court engaged Burge in a comprehensive Crim.R. 11 colloquy. The trial court discussed the maximum penalty associated with each of the 39 charges within the plea. After nearly every count, the trial court asked Burge whether he understood, and Burge answered affirmatively on all occasions. When discussing the failure-to-comply charges, the court confirmed that Burge understood the meaning of "mandatory" and "consecutively." (Tr. 75.) During the colloquy, the court asked Burge whether he understood that "this Court would still have the authority to sentence you to prison for longer than that ten-year period. Do

you understand that?" and Burge agreed. (Tr. 103.) Burge ultimately pleaded guilty pursuant to the plea agreement.

{¶ 7}  Following his plea hearing, Burge, pro se, filed a deluge of motions including two "motion[s] to suppress," two "motion[s] to dismiss," two "motion[s] for exclusion," and a "motion to withdraw plea deal." Relevant to this appeal, the filings generally alleged that Burge felt "threatened" and "coerced" into taking his plea, that he was promised a "minimum" sentence and was dissatisfied with his counsel, and felt that the trial court should have granted his oral motion for new counsel instead of proceeding to the change-of-plea hearing.

{¶ 8}  The next week, the parties convened again. The court addressed all of Burge's pro se motions, stating that "the [c]ourt did review those and will note that the defendant is requesting to withdraw those pro se motions." (Tr. 138.) The State presented the contents of its sentencing memorandum and asked that the trial court impose a sentence greater than the ten-year minimum. Two of Burge's relatives addressed the court as mitigation witnesses, and then Burge's counsel addressed the court and specifically addressed the tenuous relationship with his client.

> Ultimately, Your Honor, despite everything we have been through, and our disagreements, and we expect disagreements at times because not everyone agrees with the facts that are presented, but when you have a matter like this with these number of counts, Your Honor, arguments are going to happen, there's going to be disagreements about certain acts at certain times on certain days.
>
> But ultimately we got to a point on March 3rd, which was our, in fact, trial date, that we could possibly resolve this. And, of course, it started

with an offer from the State, which I thought was reasonable, which was, you know, plead to these 39 counts with an agreed range of 14 to 18 years. Obviously that offer was on the table approximately two weeks. I discussed that matter over those two weeks with Mr. Burge. Obviously, he wanted to ultimately make a counteroffer because he wanted to obviously minimize his exposure or try to minimize his exposure with another agreement. And he himself had posed could we have an agreement of ten years. That's how we got to this point.

Now, of course, I understand, we all understand that yes, the State would agree to that minimum bottom number of years but would not agree to a top end. I use this as a point of reference to the Court as to where we were in negotiations and where we are now.

(Tr. 190-192.) Burge briefly addressed the court and offered his apologies and also remarked that he wished for less prison time so that he could see his grandparents. The trial court once again asked if Burge was withdrawing all of the pro se motions that had been filed after the change-of-plea hearing to which Burge and his attorney both responded affirmatively. Burge was sentenced to 18 years with a Reagan Tokes tail, resulting in a possible 22-year indefinite sentence.

{¶ 9} Burge appealed, assigning the following errors for our review:

1. Appellant was denied his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

2. The trial court failed to comply with the mandates of Criminal Rule 11, rendering appellant's guilty plea not knowingly, intelligently, and voluntarily made.

3. The sentence imposed by the trial court is not supported by the record and is otherwise clearly and convincingly contrary to law requiring the sentence to be vacated and appellant resentenced pursuant to agreement, or, otherwise that appellant's plea be vacated as not entered knowingly, intelligently, and voluntarily.

4. The trial court erred by imposing consecutive sentences, as the record does not support the findings required by R.C. § 2929.14(C)(4).

5. The trial court erred and abused its discretion by denying appellant's post-sentence motion to withdraw his guilty plea without conducting a hearing.

{¶ 10} For ease of discussion, we elect to address Burge's assignments of error in the order that they occurred temporally.

{¶ 11} Burge's second assignment of error challenges the trial court's Crim.R. 11 colloquy as deficient, thus rendering his pleas not knowingly, intelligently, or voluntarily entered.

{¶ 12} Crim.R. 11 "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). In reviewing pleas, we determine "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Id.* at ¶ 12, citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16; *State v. Clark*, 2008-Ohio-3748, ¶ 26; *State v. Miller*, 2020-Ohio-1420, ¶ 19. With some exceptions, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.*, quoting *Nero* at *id.* When reviewing a colloquy for compliance with Crim.R. 11, we ask "(1) has the trial court complied with the relevant provisions of the rule? (2) if the court has not complied fully with the rule, is the purported failure

of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id*. at ¶ 17.

{¶ 13} "'A trial court does not err by imposing a sentence greater than "that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor."'" *State v. Jordan*, 2024-Ohio-2361, ¶ 23 (8th Dist.), quoting *State v. Buchanan*, 2003-Ohio-4772, ¶ 13 (5th Dist.), citing *State v. Darmour*, 38 Ohio App.3d 160 (8th Dist. 1987); *State v. Tucci*, 2002-Ohio-6903 (7th Dist.)

{¶ 14} Burge agrees that the trial court "perform[ed] a rote recitation of these constitutional rights," but argues that he could not have understood the maximum penalty or the consequences of his plea, given the 39 separate convictions and various discussions held with the trial court. He also argues that he would not have taken this plea had he known that the trial court was going to impose a sentence greater than the range he explicitly rejected in the trial court's presence.

{¶ 15} On this record, we cannot conclude that the trial court erred in complying with Crim.R. 11 thus rendering Burge's plea not knowingly, intelligently, or voluntarily entered. Burge does not point us to any specific portion of the colloquy, only a conversation where the trial court was discussing the different calculated total numbers that were later corrected and clarified. Burge instead argues generally that there is no possibility that he could have understood the

impact of his plea due to the number of charges involved with the plea, despite the proper administered colloquy. The record significantly contradicts Burge's contention that he would not have taken the plea had he known the trial court was going to impose a sentence greater than the plea deal he rejected. As discussed in the facts, the trial court was careful to make sure that Burge understood the implications of taking this plea, including warning him numerous times that it could impose a sentence over the ten-year minimum. The State also provided that it would be seeking more than ten years because of the nature of the crimes. At the beginning of the colloquy, the trial court asked Burge if it was correct that "the only promise that's been made is the plea arrangement as to these pleas, and the fact that there must be an understanding by the parties that there will be at least a minimum sentence of ten years; is that correct?" to which Burge agreed. (Tr. 66-67.) The trial court explained each individual offense to which Burge was pleading and explained the maximum possible exposure; this included ensuring that Burge understood the Reagan Tokes Law tail as well as the terms "mandatory," "consecutive," "concurrent," and their respective implications. The trial court also engaged Burge in detailed discussions about the implications of pleading guilty to his two failure-to-comply charges, which require that the sentence is served "consecutively to any other prison term or mandatory prison term imposed upon the offender." R.C. 2921.331(D). The trial court frequently paused to ask Burge if he understood, and Burge consistently answered affirmatively. Burge even asked a question about

mandatory time during the colloquy, suggesting that he was following the court's colloquy and wanted to make an informed decision before taking his plea.

{¶ 16} On this record, we cannot conclude that the trial court's colloquy resulted in Burge entering his plea unknowingly, unintelligently, or involuntarily. The trial court fully complied with the mandates of Crim.R. 11, and Burge's contention that he would not have taken the plea had he known that he would receive prison time above and beyond 18 years is unsupported by the record.

{¶ 17} We do note, however, that this case presents a close call. Throughout the pendency of this case, Burge repeatedly expressed his (1) dissatisfaction with his counsel, (2) desire for a jury trial, and (3) unwillingness to accept a plea deal with the 14- to 18-year range because he was concerned about the length of his sentence and felt that 14 years was too long of a minimum. Even after trial counsel and the court warned Burge that trial could subject him to a significantly larger potential prison sentence, and that his plea with a ten-year floor could expose him to any maximum within the permitted sentences, Burge initially maintained a preference for trial. The trial court was affirmatively aware of these preferences and intentions. It is clear from this record that Burge's overarching concern was his minimum exposure, and it is not unreasonable to suggest that Burge may not have taken the plea had he known he would receive even a year over 18 years. The trial court's colloquy and the extensive record where Burge indicated his understanding, which Burge cannot contradict with anything more than his self-serving statements, is fatal to this assigned error.

{¶ 18} Burge's second assignment of error is overruled.

{¶ 19} In his fourth assignment of error, Burge argues that the trial court did not make the proper findings under R.C. 2929.14 necessary to impose consecutive sentences.

{¶ 20} We first address Burge's argument regarding the failure-to-comply charges in Counts 7 and 47. This court has previously held in *State v. Stewart*, 2025-Ohio-2676, ¶ 18 (8th Dist.), that where the trial court is required by law to impose consecutive sentences, it need not make R.C. 2929.14(C)(4) findings. *State v. Miller*, 2025-Ohio-5350, ¶ 13 (8th Dist.). Accordingly, because Counts 7 and 47's consecutive sentences were imposed pursuant to statute, the trial court was not required to make any findings pursuant to R.C. 2929.14(C)(4).

{¶ 21} However, the trial court discretionarily imposed consecutive sentences on Counts 28, 42, and 61. We thus review the trial court's findings as related to these three counts.

{¶ 22} Consecutive sentences may be imposed only if the trial court makes the required findings pursuant to R.C. 2929.14(C)(4). *State v. Bonnell*, 2014-Ohio-3177, ¶ 20-22. Under the statute, consecutive sentences may be imposed if the trial court finds that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) at least one of the following applies:

(1) The offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under post-release control for a prior offense;

(2) At least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or

(3) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 23} To impose consecutive terms of imprisonment, a trial court must both make the statutory findings mandated for consecutive sentences under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell* at syllabus.

{¶ 24} In *State v. Gwynne*, 2023-Ohio-3851, the Ohio Supreme Court held that de novo review of the trial court's imposition of consecutive sentences is contrary to the language of R.C. 2953.08(G)(2), which provides that an appellate court may only increase, reduce, or otherwise modify consecutive sentences if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) findings. *Id.* at ¶ 13, 16. The Court defined "clear and convincing evidence" as "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 14, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954),

paragraph three of the syllabus. The Court instructed the appellate court that "it must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences" and that it should employ a deferential standard regarding the trial court's consecutive-sentence findings. *Id*. at ¶ 15.

{¶ 25} In this case, we find that the trial court made the findings required by R.C. 2929.14(C)(4) both at the sentencing hearing and in its judgment entry, and that the record clearly and convincingly supports these findings. The trial court did not have to state its factual findings or reasoning for imposing consecutive sentences. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 2014-Ohio-3177, at ¶ 29; *see also State v. Jones*, 2024-Ohio-1083, ¶ 11, citing *Bonnell* at ¶ 37.

{¶ 26} Here, Burge was charged in a 63-count indictment and pleaded guilty to 39 counts for various crimes occurring over five months, "involv[ing] numerous different police agencies on the east side of the county as well as some into Lake County, and ultimately he was charged regarding 15 different incidents." (Tr. 139.) At sentencing, the prosecutor detailed several events forming the basis of this indictment, including (1) a theft and break-in at a Marc's parking lot where he broke a car window, stole a cell phone, and sent a substantial sum of money to his own CashApp account, (2) driving and flipping over a stolen Kia, fleeing on

foot, and leaving behind a stolen firearm, (3) having a different stolen vehicle with broken out windows in his driveway, and when police approached, Burge drove the stolen vehicle through several front yards, and (4) various other incidents relating to vehicle break-ins, robberies, and thefts sometimes involving firearms.

{¶ 27} Based on the record before us, this is not a case where we do not have a "firm belief or conviction" that the record does not clearly and convincingly support the trial court's findings. In fact, our review reveals that the record supports the court's findings, and Burge has not demonstrated otherwise. Accordingly, Burge's fourth assignment of error is overruled.

{¶ 28} Similarly, Burge's third assignment of error alleges that his sentence was contrary to law and did not comply with the overriding purposes of felony sentencing in R.C. 2929.11 and did not consider the seriousness and recidivism factors in R.C. 2929.12. Burge argues that "[w]hile [his] conduct was serious, the sentence fails to adequately account for mitigating factors." He cites the involuntariness of the plea based on Burge's denial of the initial plea offer, Burge pleading to 39 offenses, and Burge's remorse at sentencing. Burge again incorporates an argument about the propriety of the plea, i.e., whether it was entered knowingly, intelligently, and voluntarily.

{¶ 29} A sentence is contrary to law if it is outside the statutory range for the offense or if the sentencing court failed to consider the purposes and principles of sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Levison*, 2021-Ohio-3601, ¶ 12 (8th Dist.). And, "if a sentence is within the

statutory range for the offense and the trial court considered both the purposes and principles of felony sentencing in R.C. 2929.11 and the relevant sentencing factors under R.C. 2929.12 when imposing the sentence, the sentence is not contrary to law." *Id.* citing *State v. Phillips*, 2021-Ohio-2772, ¶ 7 (8th Dist.). Although the court is required to consider R.C. 2929.11 and 2929.12, these statutes are not factfinding statutes. *Id.* at ¶ 16. The court is not required to make findings on the record or use any particular language when contemplating the facts in R.C. 2929.11 and 2929.12. *Id.*, citing *State v. Jones*, 2020-Ohio-6729, ¶ 20. Stating that the court considered the required sentencing factors alone is sufficient to fulfill the obligations under R.C. 2929.11 and 2929.12. *Id.* at ¶ 17, citing *Phillips* at ¶ 8.

{¶ 30} During sentencing, the trial court expressly stated that it considered the relevant statutes. "Prior to coming to the [b]ench I reviewed 2929.11 for the principles and purposes of sentencing, 2929.12 for the seriousness and recidivism factors . . . . The Court has formulated the following decision based upon those overriding principles and purposes of felony sentencing . . . ." (Tr. 204.) It also stated that it considered all of the mitigation presented. Moreover, the court's journal entry indicates that it considered all required factors of the law. Accordingly, we are unable to find that Burge's sentence was contrary to law.

{¶ 31} Burge's second argument pertains to the knowing, intelligent, and voluntary nature of his plea. We fully incorporate our analysis from the second assignment of error and reject the presented arguments. Burge's third assignment of error is overruled.

{¶ 32} Burge's first assignment of error alleges that he received ineffective assistance of counsel. He supports this contention with the following argument:

On March 14, 2025, a full thirteen days prior to sentencing, Appellant filed a pro se pre-sentence Motion to Withdraw his Plea, stating he felt "threatened and coerced into taking the plea." He further indicated that his attorney had improperly promised him that he would receive the minimum sentence of a negotiated 10-year floor. These are serious allegations going to the heart of the plea's validity. They must also be reviewed in the context of the history of Appellant's relationship with his trial counsel. Appellant had previously moved the trial court to withdraw his trial counsel and continue trial for Appellant to receive new counsel which the trial court denied. This was done at the plea-bargaining phase which the trial court dismissed as simply the Appellant not liking what he was being told.

{¶ 33} "To substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate that defense counsel's performance was seriously flawed and deficient, and that the result of the trial would have been different had proper representation been afforded." *State v. Foster*, 2010-Ohio-3186, ¶ 22 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668 (1984). Where, as here, a defendant pleads guilty, "a defendant must demonstrate there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *State v. Dansby-East*, 2019-Ohio-2218, ¶ 8 (8th Dist.), citing *State v. Szakacs*, 2009-Ohio-5480, ¶ 15 (8th Dist.).

{¶ 34} As previously discussed, the record before us, particularly the colloquy, contradicts Burge's ineffectiveness claims. Contrary to Burge's assertion that he was promised that he would only receive a ten-year sentence, the record indicates that on numerous occasions prior to and during the colloquy, he was

reminded and affirmatively acknowledged that ten years was merely a minimum and that (1) the State was going to seek more time and (2) that the trial court could be permitted to exceed the ten-year minimum, and Burge was advised as to these potential maximums. Furthermore, Burge conceded that he was satisfied with his attorney's representation and was given multiple occasions to speak to his attorney and ask the court questions. He cannot now make a statement to the contrary as the basis for alleging that his counsel was ineffective. *See, e.g., State v. Shipp*, 2026-Ohio-416, ¶ 26 (7th Dist.). On this record, we cannot find merit to Burge's claim that he would not have entered his plea but for counsel's representations when the record directly contradicts this statement.

{¶ 35} Burge's first assignment of error is without merit and overruled.

{¶ 36} In his fifth and final assignment of error, Burge alleges that the trial court should have held a hearing on his postsentence motion to withdraw his guilty plea.

{¶ 37} Crim.R. 32.1 provides that a trial court may grant a defendant's postsentence motion to withdraw a guilty plea only "to correct manifest injustice." Accordingly, a defendant who seeks to withdraw a guilty plea after sentencing bears the burden of demonstrating "manifest injustice." Manifest injustice has been described as a "clear or openly unjust act," *State ex rel. Schneider v. Kreiner*, 1998-Ohio-271, ¶ 20, that is evidenced by "an extraordinary and fundamental flaw in the plea proceeding," *State v. Hamilton*, 2008-Ohio-455, ¶ 8 (8th Dist.). A

postsentence withdrawal of a guilty plea is permitted "only in extraordinary cases." *State v. Rodriguez*, 2016-Ohio-5239, ¶ 22 (8th Dist.).

{¶ 38} Regarding a hearing, the trial court is not required to hold a hearing on a postsentence motion to withdraw a guilty plea. *State v. Chandler*, 2013-Ohio-4671, ¶ 7 (8th Dist.). A hearing is required only if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea. *Id.* An evidentiary hearing on a postsentence motion to withdraw a guilty plea is generally not required if "the record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice." *State v. Russ*, 2003-Ohio-1001, ¶ 12 (8th Dist.). The trial court's decision whether to hold a hearing on a postsentence motion to withdraw a guilty plea is reviewed for abuse of discretion. *State v. McElroy*, 2017-Ohio-1049, ¶ 31 (8th Dist.).

{¶ 39} As discussed in the prior assignments of error, the record and Burge's filing do not demonstrate that a "manifest injustice" occurred. Burge's postsentence motion to withdraw his guilty plea was premised on points that were already addressed and resolved during prior hearings and his dissatisfaction with his trial counsel, which is directly contradicted by the record. We find that the trial court was not required to hold a hearing on Burge's motion.

{¶ 40} We accordingly overrule Burge's fifth and final assignment of error.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
ANITA LASTER MAYS, J., CONCUR